GRACE S. YOCUM and E. L. Yocum, Appellants, v. WILLIAM E. CHISMAN and J. J. Conboy, Copartners Doing Business as Chisman & Conboy, Respondents.

(168 N. W. 621.)

**Land — conveyance — subject to mortgages — grantees assuming and agreeing to pay — payments made by grantors — action to recover back — lost deed.**

1. In this case the plaintiff conveyed to the defendants a quarter section

of land subject to five mortgages. Then they had to pay on the fifth mortgage $550 and interest, and they sue to recover the same on the ground that by the deed which was lost defendants assumed and agreed to pay all the mortgages.

**Agreements in deed — evidence conflicting — burden of proof.**

2. The plaintiffs each swear that the deed contained such a covenant. The defendants swear it did not, and the trial court found it did not, and that defendants did not in any manner assume or agree to pay the mortgages.

**Trial court — findings of — weight to be given them — evidence — proof — burden of.**

3. We may not all agree concerning the weight to be given to the findings of the trial judge, but we must all agree that in such a case some weight should be given to the findings. We must all agree that great weight is to be given to the undisputed fact and the probabilities; also that plaintiffs have the burden of proof, and it is for them to sustain their appeal by convincing evidence.

**Testimony — not convincing — in favor of either party — burden of proof.**

4. On the whole, the case is not free from doubt. There is no convincing weight of testimony in favor of either party. Hence, as the burden of proof is on the plaintiffs, the judgment is affirmed.

Opinion filed June 3, 1918. Rehearing denied July 10, 1918.

Appeal from the District Court of Ransom County, Honorable *Frank P. Allen,* Judge.

Plaintiffs appeal.

Affirmed.

*Barnett & Richardson* and *H. R. Turner,* for appellants.

"The contract by which a grantee assumes the payment of existing encumbrances is separate and distinct from the conveyance. It may be and often is embodied in the deed; but it may be a separate writing or it may rest entirely in parol." Moore v. Booker, 62 N. W. 607, 609.

*Kvello & Adams,* for respondents.

"The grantee of mortgaged land does not incur a personal liability for the payment of the mortgage debt enforceable by the mortgagee, merely because the deed recites it is made subject to mortgages; such personal liability is created only by a distinct assumption of the debt or a contractual obligation to pay it." 27 Cyc. 1343 and cases cited.

"The omission to insert in a deed a covenant that the grantee will

40 N. D.—11.

assume or pay a mortgage is strong evidence that the parties did not intend that grantee should be liable." 27 Cyc. 1348, note 27, title, Mortgages.

"If the deed had contained an express contract of assumption it would ordinarily be sufficient by itself." 27 Cyc. 1348, text.

Robinson, J.   The plaintiffs aver that in May, 1914, they made to defendants a deed to a quarter section of land which was subject to certain mortgages; that in consideration thereof defendants assumed and agreed to pay the mortgages; that they failed to pay the same and, hence, the plaintiffs had to pay on a mortgage $625.   The plaintiffs appeal from a judgment against them.

The deed was lost and the question is:   Did the deed contain a covenant for the grantees to assume and pay the mortgages?   The plaintiffs each swear that the deed contained such a covenant.   The defendants swear it did not, and the trial court found it did not, and that defendants did not in any manner assume or agree to pay the mortgages.

We may not all agree concerning the weight to be given to the findings of the trial judge, but we must all agree that in such a case some weight should be given to the findings.   We must all agree that great weight is to be given to the undisputed fact and the probabilities; also that plaintiffs have the burden of proof and it is for them to sustain their appeal by convincing evidence.

Defendants were in the real estate business.   Chisman made out the deed himself on a regular blank, and such a form never has a printed covenant that the grantees shall assume or pay mortgages.   If the deed had any such covenant, it was written or dictated by Chisman, and it is very improbable that he should do it.

The land was mortgaged for more than its value.   In 1909 the plaintiffs purchased it for $6,400, turning in a stock of goods for $2,000. The mortgages were:   $3,000; a commission mortgage $225; a third mortgage to the bank at Lisbon $1,000; the mortgage to defendants $900; a fifth mortgage to Stevenson (father of Mrs. Yocum) $550.

The total, with interest, amounts to $37.50 an acre.

It is improbable that defendants should have bargained to buy the land at that price. Their mortgage was prior to that of Stevenson's and they did not have to pay it. They knew they could redeem from a foreclosure and cut off the Stevenson mortgage. They did not consider the Yocum deed worth recording unless they could find a purchaser for the land at $37.50 an acre.

In regard to the clause in the deed that defendants assumed and agreed to pay the mortgages of record and that each mortgage was actually specified, the testimony of plaintiffs is not at all convincing, and indeed it is highly improbable, and the same is true of the testimony of each plaintiff concerning another deed marked exhibit "H." Concerning a copy of a letter marked exhibit "C" which plaintiffs put in evidence as a copy of a letter sent by them with their deed to the defendants, it is no cogent proof. It did not change or vary the terms of the deed. It was no part of the contract. It may never have been read by the defendants. Yet on the whole, the case is not free from doubt. There is no convincing weight of testimony in favor of either party. Hence, as the burden of proof is on the plaintiffs, the judgment is affirmed.

GRACE, J. (dissenting). A preliminary statement of the facts in this case will greatly assist in gaining a clear conception of the issues involved therein. From about the 1st day of October, 1913, until about the 8th day of April, 1914, plaintiffs were the owners of the premises described as the S. W. ¼ of section 1, township 135, range 57, Ransom county, North Dakota, which land they had purchased from or through the defendants in the fall of 1908, subject to the following encumbrances: A first mortgage to one Williams for $3,000; a commission mortgage to the same party for $225; third mortgage to defendants for $1,000; fourth mortgage to defendants for $900; and fifth mortgage to Stevenson for $550. These encumbrances amounted to about $37.50 per acre, and, according to the testimony, approximated the actual value of the land per acre.

The defendants had sold one of their mortgages to a bank, which mortgage they described as the second mortgage, which is the $1,000 mortgage, but, in fact, is the third mortgage on the land. The bank

foreclosed that mortgage, and the bank, getting possession of the land, sold it for $36 per acre, which was something less than the encumbrances against the land. Stevenson had notice and knew of the foreclosure above referred to during the time such foreclosure was being made.

The plaintiffs had moved from said land to the city of Fargo, prior to the execution and delivery by the plaintiffs of said land by warranty deed to the defendants, which deed became lost and was never recorded. The real issue in this suit is whether or not said lost deed contained a certain stipulation to the effect that the defendants, in said warranty deed from the plaintiffs, assumed and agreed to pay all the encumbrances then of record, which would include all the encumbrances we have heretofore enumerated. The plaintiffs claim that such clause was in said deed and immediately followed the enumeration of the mortgages in said deed which were described as mortgages of record. The defendants strenuously deny that said assumption clause and agreement to pay said mortgages was in said warranty deed, and this is the only issue in this case.

The plaintiffs were compelled to and did pay the $550 mortgage to Stevenson and bring this action against the defendants to recover under the alleged contract of the defendants to assume and pay said mortgage, together with the other mortgages then of record. The answer is a general denial.

The evidence relative to the issues involved in this case as above set forth consists mostly of letters passed back and forth between the plaintiffs and defendants. There are five letters which have a direct bearing upon the issue in this case. They were exhibits A, B, C, D, and E. Exhibit A is a letter written by E. L. Yocum from Dickinson, North Dakota, to the defendants. The letter was properly addressed, stamped, and placed in the postoffice, and the presumption is that it was received by the defendants. As these letters have a direct bearing upon the assumption clause in question, alleged to have been in the deed by plaintiffs and denied to have been in the deed by the defendants, the letters will tend to show whether or not such assumption clause was actually in the deed. Exhibit A is as follows:

Dickinson, N. D., Feb. 11, 1914.

Chisman & Conboy,
      Lisbon, N. D.

Gentlemen:—

Your favor of the 9th inst. at hand and sorry to note the condition of affairs in regard to that land, but you will see that we are powerless in this matter, as you say there will be nothing in this sale for us (after the mortgages are paid).

Now, if you will accept the land for what there is against it we will have to let it go, that is all there is to it; but I have no money to put into this land, as it takes absolutely every cent that I can rake and scrape to bearly live. Now Mr. C. K. Myhre, at Nome, wants this land, and I have priced it to him at $40 an acre, and I have received the following letter from him:

"I was in Fargo this week and I tried to look you up but you was out of town, I like to hear from you what to do about that land down there, we would like to list it from you, I am sure we can sell first part of the season. Kindly let me hear from you. We are sending out a lot of lists to Iowa, Illinois, Wisconsin, Minnesota, and Canada, and some buyers are coming here soon to look at this land.

                 "(Signed) C. K. Myhre,
                     "Nome, North Dakota."

Mr. Myhre has made an offer of $35 an acre for the whole place and take it himself, and they are of course expecting to get $42.50, as he told me this some time ago.

Now we do not want to stand in anybody's way in this deal at all, we have lost all we have and are at the end of the rope, and I sincerely trust *that you folks can see your way clear to take this off our hand; as you will certainly not lose a cent at $37.50 an acre on the home quarter, and if this meets with your approval and you will pay off the mortgage, we will gladly give you the deed* and try and forget that we ever owned a piece of land as it's a cinch we'll never own another farm.

Please let me hear from you at once so the folks in Ill. may know this is sold, and I might as well tell you that they will have nothing further to do with me down there because they blame this whole affair on me and say the whole matter is that I did not farm the land good

enough, and I'll tell you frankly that it has come to the point where I don't care much what happens.

Very truly yours,

It is clear, from this letter, that the defendants, after they accepted such offer, were to pay the mortgages against the land, and the price of $37.50, as stated in such letter, corresponds with the amount of the mortgages then against the land. Exhibit B is a letter from the defendants addressed to E. L. Yocum, and would seem to be a reply to exhibit A, the letter written by E. L. Yocum from Dickinson to the defendants. It reads as follows:

Lisbon, N. D., 4–2, '14.

Mr. E. L. Yocum,
Fargo, N. D.

Dear Sir:

We are inclosing warranty deed for your signatures, as per your letter of some time ago, we to take the land, subject to the mortgage now against it, which, with taxes, back interest, etc., amounts to over $37.50 per acre. We have offered this land to a party near it for just what there is against it, but there are two brothers of them and one of them has been sick, down in Minn., and so far we have not been able to close with them. They were to take the whole half section. However, the interest on the first mortgage was due last March 1st, amounting to $210, and there is also a balance of some over $125 due on the 1912 interest, and Williamson refuses to let it run any longer, and if it is not paid at once, he will be forced to foreclose the first mortgage, and as we have been putting in money all the time to carry this along, we do not like to pay in any more, when the land is in the shape it is now, and *if we are to take care of this year's interest, and taxes, until we can sell the land, we want title to it, as we have plenty of mortgages on it already, and by the time we get them all paid off it will be a dear piece of land, and if Williamson forecloses his mortgage, it will only add a lot of extra expense on us, and you would lose out also so as a matter of protection to us, we ask you to sign and have acknowledged,*

*the inclosed deed, and return to us and we will try to get the whole half section sold, so it will stay sold.*

Kindly let us hear from you as soon as possible, and greatly oblige

Yours respectfully,

Chisman & Conboy,

By W. E. Chisman.

Exhibit C is not dated, but it appears to answer exhibit B. Exhibit C is as follows:

Inclosed please find warranty deed properly signed and witnessed and *according to which you assume the mortgages of record as the purchase price.* Hoping this is satisfactory and thanking you for all past courtesies, we beg to remain,

Very truly yours,

The Yocums.

Exhibit D appears to be in answer to exhibit C, and is as follows:

Lisbon, North Dakota, 4–8–14.

Mr. E. L. Yocum,

Fargo, N. D.

Dear Sir:—

We have yours of recent date with deed inclosed, and we expect it is all O. K., as it seems to be properly signed and acknowledged.

Thanking you for your promptness in this matter, we beg to remain

Yours truly,

Chisman & Conboy,

By John Conboy.

Exhibit F simply shows that Mr. and Mrs. Stevenson had notice that the land in question upon which they held mortgage for $550 went to sheriff's certificate, and that they made demand on the Yocums for the payment of the $550. Exhibit F is as follows:

Fargo, N. D., 8–2–15.

Chisman & Conboy,

      Lisbon, N. Dak.

Gentlemen:—

Mr. and Mrs. Stevenson have rec'd notice that the land upon which they hold mortgage for $550 is held by sheriff's certificate, and they have accordingly made formal demand for payment from us.

*As you gentlemen assumed this mortgage when this land was transferred according to our former correspondence you will therefore kindly attend to this matter at once.*

                              Very truly yours,

                                E. L. Yocum.

1015 6th St. South, Fargo, N. D.

Exhibit J does not show at what date it was written, and is a letter from Chisman & Conboy to E. L. Yocum at Fargo, North Dakota.

E. L. Yocum,

      Fargo, N. Dak.

Dear Sir:—

We have yours of recent date, and note what you say about the land. We are sorry that it has come to this, and only wish we could turn this land and make you something out of it, but we have had our bad luck during the past two years the same as anyone else, and it seems that N. Dak. has a black eye ever since the year of the black rust. Mr. Chisman is in Minn. at present time and will be home Monday morning, and if your proposition is satisfactory to him we will send you the necessary papers to sign. Trusting that we may be able to save something for you out of this deal, we beg to remain.

                                Yours truly,

                              Chisman & Conboy.

Exhibit K appears to bear no date, and is a letter from Chisman & Conboy to E. L. Yocum at Fargo, North Dakota, and is as follows:

E. L. Yocum,

   Fargo, N. Dak.

Dear Sir:—

On March 1st, there will be two years' interest due on your $3,000 mortgage less what was applied on it last fall out of the crop. Now, if you are not in a position to take care of this matter on March 1st, something else will have to be done with the land. I had an offer of $35 per acre on the half section, but did not submit it to you as I did not suppose you wanted to accept it, but think I can still close the deal if you want to let it go. Let me know at once as you better save something out of it than to let it all go, as they will sure foreclose this mortgage this spring unless the interest is paid up.

        Yours truly,

        Chisman & Conboy,

        By ——————

Exhibits J and K, from their tenor, would appear to have been written prior to the time the other exhibits were written. No question is raised as to the stamping, addressing, and posting of the letters, although proper proof thereof was made as to some of the letters. In fact, it seems to have been conceded or granted that the letters were properly stamped, addressed, and posted; and, this being true, it is presumed they were received by the persons to whom they were thus sent.

We have thus quoted the correspondence in full, as it is about the only means by which it may be, with any degree of certainty, determined whether the assumption clause was, in fact, in the warranty deed of the land in question from the plaintiffs to the defendants.

From a careful reading of all the correspondence, which has been fully set out, it would seem to conclusively appear that it was the intention of both parties, as expressed in such correspondence, that the defendants would assume all the mortgages then of record at the time of the execution of the said warranty deed. The underscored part of the correspondence would seem to be almost conclusive, if not wholly so, that the contract between plaintiffs and defendants, and the understanding and agreement was fully had that the mortgages then of record at the time of the execution of the warranty deed should be assumed

by the defendants. The defendants, when they sent the deed to the plaintiffs to sign, called their attention to the fact that the mortgages of record would amount to about $37.50 an acre. This appearing to have been the real understanding and agreement between the parties as expressed in their correspondence, it causes the testimony of the plaintiffs to greatly outweigh that of the defendants.

The whole correspondence tends to substantiate the testimony of the plaintiffs, and does not, in any manner, tend to strengthen the testimony of defendants. There is some dispute in the testimony as to whether or not the mortgages were enumerated in the deed, or whether they are referred to as the mortgages then of record; but this is not so material, as the amount of mortgages upon the land is conceded by both parties, the important matter being whether or not the defendants agreed to assume and pay such mortgages, and we think the whole correspondence clearly shows that such was intended and agreed to be the contract. The plaintiffs testified positively that such was the contract of the defendants, and their testimony is fully supported by the correspondence in the case. In fact, the conclusion is almost irresistible that the defendants made such agreement. Having concluded that the defendants made such an agreement, they are bound to pay such mortgages in question which the plaintiffs were compelled to pay to the Stevensons.

This case was one properly triable before a jury. The jury, however, was waived by both parties and the case was tried to the court. The findings of fact of the court under such circumstances usually are entitled to great weight, and should not be disturbed unless the findings of fact are clearly against the preponderance of the evidence. This rule is particularly applicable where the major part of the evidence was given by witnesses orally. It does not apply with so much force where the important part of the testimony is to be deduced from records, writings, or correspondence. As we view this matter, the evidence which really is decisive of this case and which goes to the credibility of the witnesses, is furnished by the correspondence thereof, the letters hereinbefore set out in full.

This being true, the findings of the trial court do not have any more weight than they would in a case where the parties were not entitled to a jury trial.

In view of what we have said and the fact that the correspondence almost entirely supports the plaintiffs' testimony, and thus adds to the credibility thereof, we are of the opinion that the findings of the trial court are clearly against the preponderance of the evidence.

## On Petition for Rehearing.

PER CURIAM. Plaintiffs have petitioned for a rehearing. In the petition it is asserted that we erred in our former decision in sustaining the findings of the trial court and in holding that the plaintiffs had failed to establish that the deed involved in this controversy contained an assumption clause. It is further asserted that, regardless whether the deed contained such clause, the letters between the parties established a contract under the terms of which the defendants assumed and agreed to pay off all outstanding mortgages against the premises.

The evidence shows that the firm of the defendants had been dissolved. Their papers and letters had been dispersed or destroyed. Hence, no letters were produced by the defendants. The letter exhibit "C," upon which plaintiffs place great reliance, purports to be a copy. It is written with lead pencil. It has no date. It is not a carbon copy, but plaintiffs claim it is a true copy of the original. They admit, however, that they made no copy of the alleged assumption clause in the deed. There is a direct conflict between the testimony of the two plaintiffs as to the contents of the assumption clause. Mr. Yocum says that it was a mere general assumption clause, while his wife testifies that the clause enumerated the different mortgages in detail. There is considerable in connection with the entire transaction and the testimony of the plaintiffs with respect to exhibit "C" and the alleged assumption clause which has more or less bearing upon the credibility of the plaintiffs and the truth of their contentions. The trial judge, who saw and heard the parties, resolved the doubts against the plaintiffs. And we are unable to say that the trial judge erred, or that his findings are against the preponderance of the evidence. We therefore adhere to the conclusions reached in our former opinion.

A rehearing is denied.